FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
UNDER THE CIVIL RIHGTS ACT, 42 U.S.C. § 1983

RECEIVED
FEB 7 2005
AT 8:30 M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Anthony Boone
(Enter above the full name of the plaintiff in this action)

v.

Devon Brown, James Barbo, Richard Cevasco, Sheila Lee, Shirley Tyler, Roy Hendricks, C.A. Lucca, Gary Sheppard, R. Makarski, Barber Marshall, Mary Amato, Donald Mee, Jr. Frank Bruno
(Enter above the full name of the Defendant or Defendants in this action).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
Civil No. 05-750(AET)

COMPLAINT

INSTRUCTIONS, READ CAREFULLY

1. Previous Lawsuits

a. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this state action or otherwise relating to your imprisonment? Yes ( ) No (X)

b. If your answer to a. is yes, describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

i. Parties to this previous lawsuit:

Plaintiffs ______________________
______________________
______________________

Defendant ____________________
____________________
____________________
____________________

ii. Court (If federal court, name the district if state court, name the county).

____________________
____________________

iii. Docket Number

____________________
____________________

iv. Name of Judge to whom case was assigned

____________________
____________________
____________________

v. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?)

____________________
____________________
____________________
____________________

vi. Approximate date of filing lawsuit

____________________

vii. Approximate date of disposition

____________________

2. Place of Present Confinement

New Jersey State Prison

a. Is there a prisoner grievance procedure in this institution? Yes (X) No ( )

b. Did you present the facts relating to your complaint in the state prisoner grievance procedure? Yes (X) No ( )

c. If your answer is Yes,

i. What steps did you take? I made numerous written complaints to the Administrator, Ombudsman and the Commissioner of New Jersey Department of Corrections. I even went as far as writing the Governor of New Jersey.

ii. What was the result? They refused to do anything about the compliants that I submitted.

d. If your answer is No, explain why not? __________

e. If there is no grievance procedure in the institution, did you complain to prison authorities? Yes ( ) No ( )

f. If your answer is Yes,

i. What steps did you take? __________

ii. What was the result? __________

3. Parties

(In item a. below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiff, if any.)

a. Name of Plaintiff Anthony Boone #231911
Address Second & Cass Streets
P.O. Box 861
Trenton, New Jersey 08625

(In item b. below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use item c. for the names, positions, and the places of employment of any additional defendants.)

b. Defendant Devon Brown
is employed as Commissioner

at the New Jersey Department Of Corrections

c. Additional Defendants 1. James Barbo,
Director of Operations
New Jersey Department of Corrections
2. Richard Cevasco
Assistant Director of Operations
New Jersey Department of Corrections
3. C.A. Lucca
Phd. Quality Assurance
New Jersey Department of Corrections
4. Sheila Lee
Quality Assurance Coordinator
New Jersey Department of Corrections
5. Gary Sheppard
Chief Hearing Officer
New Jersey Department of Corrections
6. R. Makarski
Hearing Officer
New Jersey Department of Corrections
7. Roy L. Hendricks
Administrator
New Jersey State Prison
8. Shirley Tyler
Assistant Administrator
New Jersey State Prison
9. Donald Mee, Jr.
Assistant Superintendent
New Jersey State Prison
10. Mary Amato
Nurse
New Jersey State Prison
11. Barber Marshall
Nurse
New Jersey State Prison
12. Frank Bruno
Inmate Request/Remedy Form Coordinator
New Jersey State Prison

4. Statement of Claim

(State here as briefly as possible the <u>facts</u> of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheet if necessary.)

1. During the year of 1992, plaintiff submitted to the mandatory Mantoux Skin Test. On the following day, plaintiff suffered a severe allergic reaction. His arm became swollen and immovable, extremely painful; and he suffered an excruciating headache for several days.

Nurse Sheila Lee, who had administered the test and subsequently returned two (2) days later to provide the results, was informed by plaintiff of his problems and requested to be seen by a doctor. At which time Nurse Lee responded "it's nothing to worry about and the symptoms would subside in a few days, but are not life threatening."

Once again in the year of 1993, plaintiff submitted to another Mantoux Skin Test and suffered another severe reaction. This time, his arm became swollen and immovable, extremely painful; and he suffered severe chest pains. Once more, the excruciating headaches returned. However, they lasted longer than they had the previous year.

On each occasion, plaintiff referred his complaint to Nurse Sheila Lee, who informed him that it was temporary and that the symptoms would pass. Concerned, plaintiff nevertheless requested a Doctor's evaluation. In this instance, Nurse Lee, failed to list the symptom of the reaction or make note, plaintiff's desire to be seen by a Doctor.

The plaintiff, likewise requested literature, ingredients and knowledge of the possible side effects of the tuberculin used to administer the skin test. He also requested to see a Doctor to determine the cause of his allergic reactions. Hoping that the doctor would permit him to receive an alternate means of testing. This request was ultimately denied.

During the year of 1994, upon the annual TB testing, plaintiff sought, due to the aforementioned reactions, an alternate means of testing. This along with his Hypertension created extreme concern that the reactions could trigger a stroke, heart attack or some oter kind of serious illness.

Plaintiff again requested to be seen by a doctor to seek an alternate means of testing. However, not only was his request to Nurse Sheila Lee ignored, she issued a disciplinary charge for his refusal to sbit to the testing. The Disciplinary matter never went before a hearing Officer or Court Line, it was subsequently down graded and dismissed.

In 1995, upon Annual TB testing, plaintiff sought an alternate means of testing, which was again denied. However, no disciplinary charge was issued and his request to see a Doctor was again ignored.

Plaintiff explained that it was extraordinarily indifferent for an inmate experiencing abnormal reactions after submitting to a medical test, to be denied treatment or information as to why he was experiencing such symptoms by the medical department. He pointed out that submitting to the requested testing may be harmful to his well-being, asserting that he had a right to be provided additiional information regarding the tuberculin or its components to determine the possibility of allergic reactions or health threats.

From 1996 to 2002, upon each Annual TB testing request, plaintiff sought an alternate means of testing, but was refused. No disciplinary charges were issued.

His continued request to see a Doctor for his concerns were ignored. Furthermore, so were his requests for the ingredients to the TB testing materials. He sought anything to uncover what was causing him to react to the testing.

From 1996 to 2003, the plaintiff submitting numerous Inmate Request Forms, Medical Forms as well as Administrative Remedy Forms. Many of these forms were never answered and many of the forms were returned to the plaintiff claiming that they were duplicate complaints, by the Inmate Request/Remedey Form Coordinator; Frank Bruno.

In 2003, upon Annual TB testing, plaintiff sought an alternate means of testing, but medical authorities refused. Disciplinary charges were issued and the matter was held before Hearing Officer Makarski. Without plaintiff being present at the hearing, he was found guilty and given a verbal reprimand.

In doing so, Hearing Officer Makarski, denied plaintiff an opportunity to appeal his determination, causing him to appeal the finding by way of correspondence. Upon reply, plaintiff was informed that there was no appeal from verbal reprimands, despite the fact that any disciplinary infraction serve to deny prisoner's of incentive privileges (i.e. food packages, special recreation, institutional employment, etc.) and effect parole considerations.

Continuing in his desire to seek information, plaintiff sort inforation requesting to know what warnings and precautions did the manufacturer post on the label. He was advised by Nurse

Barber Marshall, that it's impossible to have an allergic reaction to the tuberculosis skin test, because it is synthethic. She explained that this was the sole reason for medical authorities denial of his request to be tested by alternate means.

Later, through a source within the medical department, plaintiff was given a copy of the manuafactor's handling procedures; and discovered that the manuafactor of the tuberculin issued a precaution of possible adverse or allergic reactions to the tuberculin or any of it's components. Once again, plaintiff requested to be tested against to the tuberculin or it's components for the possible of an allergic reaction, which was denied.

On February 9, 2004, plaintiff was approached by Officer Burton for an Annual Tuberculosis Test, at which time Officer Burton stated to the plaintiff, "if you are not going to take the skin test, there's no need for you to come out of your cell. Plaintiff, again requested an alternative means of testing with reliance on his past experiences with the medication.

On February 9, 2004, Nurse Marshall, was not present at plaintiff's cell, never seen Plaintiff and never offered plaintiff the Tuberculosis Test. However, claimed that she had offered the plaintiff the skin test.

On March 30, 2004, plaintiff housed on Unit 6-Left in General Prison Population, was in his assigned cell during the 10:30 a.m. count. At which time, he was approached, by Senior Correction Officer Burton and an unidentified male, claiming to be from the Department of Health and there to counsel plaintiff about the Tuberculosis Mantoux skin test.

Plaintiff explained to the Health Department Worker that he was allergic to that particular test. In 1992, after submitting to the Mantoux skin test, he suffered a severe allergic reaction, as well as in the year of 1993.

His arm became swollen and immovable, extremely painful; and he suffered and excruciating headache for several days. He explained that in 1993, he suffered chest pains, a rash and excruciating headaches which lasted an extensive number of days.

He further explained that each time, he referred his complaint to Nurse Sheila Lee, who told him that it was temporary symptom that would pass. Plaintiff insisted on seeking a Doctor regarding these reactions, but Nurse Lee, failed to list the symptom or reactions and comply with his wishes to be seen by a Doctor.

Plaintiff wrote numerous letters to the Administrator and the Department of Corrections which were all basically disregarded, where Assistant Administrator, Shirley Tyler, asserted that the Correctional Medical Service (C.M.S.) determined who received and chest x-ray or Mantoux skin test. However, plaintiff was consistently informed by (C.M.S.), that it is "impossible" to have an allergic reaction to the tuberculosis skin test.

On April 2, 2004, plaintiff was issued a disciplinary report for allegedly violating an prohibited act *.260 refusing to submit to mandatory medical testing.

According to C.A. Lucci, Phd. reporting the refusal, used a stamp that states; "Per The N.J.S.P. Medical Dept. And A Representative From The N.J. Dept. Of Health TB Control. The Above Inmate, After Receiving Counseling Refused To Participate In The Mandatory TB Screening Program. This Is Inconsistent

With Departmental Policy Regarding The Same. Thus, The Basis For This Charge."

On April 6, 2004, the initial court line proceedings were conducted before Hearing Officer Makarski, where plaintiff entered a plea of not guilty to the prohibited act and made preliminary request on his behalf for confrontation and cross-examination with the writer of the report and all witnesses to the incident. At this the hearing stated; "I gave you a verbal reprimand in 2003 for the same charge and since you want a confrontation, after the confrontation when I find you guilty this time you can pack your shit, cause I'm sending you to (ad-seg) Administrative Segregation! The hearing was postponed.

On April 8, 2004, the second hearing was postponed at the direction of Hearing Officer Makarski.

On April 13, 2004, the third hearing reconvened, with Hearing Officer Makarski postponing the hearing instructing plaintiff to retype and resubmit confrontation and cross-examination questions.

On April 15, 2004 the fourth hearing convened. Plaintiff resubmitting confrontation questions. Hearing Officer Makarski, postponed the hearing for various reasons (i.e. witnesses statements, answers to confrontation questions, and the collecting of evidence).

On April 29, 2004, the fifth hearing reconvened with the confrontation of Senior Officer Burton and Nurse Marshall. At this hearing, it was revealed that on February 9, 2004, plaintiff was approached by Officer Burton for an Annual Tuberculosis Test, at which time, plaintiff requested an alternative method of testing due to past allergic reactions.

It was further revealed that Nurse Marshall had never seen plaintiff to offer the Tuberculosis Test. The hearing was postponed again for the reason of confrontation.

On May 12, 2004, the seventh hearing reconvened with the confrontation of Senior Officer Guido and Senior Officer Wade. Here, it was discovered that Nurse Marshall, had never spoke or consulted with plaintiff. Officer Guido and Wade are the Wing Officer's Assigned to Unit 6-Left, where plaintiff resided. The Hearing was again postpone.

On May 18, 2004, the eighth hearing convened with confrontation of C.A. Lucca, Phd. At these proceedings, it was revealed that, Mr. Lucca (issued the disciplinary report) based on an alleged report issued by an unknown health department employee The Report and the employee were never produced or revealed. Mr. Lucca, likewise never offered plaintiff the Tuberculosis Test. Mr. Lucca, never spoke to Plaintiff, never reviewed the Plaintiff's medical records, never produced the report which was the reason for issuing a disciplinary report; nor, supply the name of the health department worker who allegedly wrote the report. In fact, he had never seen him until this day.

On May 20, 2004, at the final hearing, and without the benefit of attaining the statement from the Quality Assurance Coordinator or confrontation with the Health Department worker who'd allegedly counseled plaintiff and made written reports which were never produced, Hearing Officer Makarski found plaintiff guilty of the charge and sanctioned him to 15 days detention, 180 days administrative segregation, 180 days loss of commutation time, 30 days loss of privileges. Hearing Officer Makarski, found the following; "report found credible as to the charge," and the health department worker report was not necessary to

found plaintiff guilty."

In fact, during the final hearing the Hearing Officer became very upset, used profanity and boldly stated; "I Am The Judge, I Am The Jury And I Am The Prosecutor" in these proceedings.

Also on May 20, 2004, it was revealed that per the Hearing Officer's request that he had an medical professional (the resident doctor) viewed plaintiff's medical records, when infact, Nurse Mary Amato, reviewed the medical records and upon the hearing officer's request, provided a written report. However, nurse Amato, was not a qualified medical professional, which in turn clearly violates the confidentiality clause of viewing medical records without first attaining a signed waiver of consent to do so.

The plaintiff has been confronted by numerous officers that it would be in his best interest to stop writing the remedy forms before they have to make the plaintiff's life a "living hell."

The plaintiff, took matters into his own hands and begun writing letters to the U.S. Department of Health & Human Services, the Department Of Corrections, the State Ombudsman for Correctional Medical Services as well as writing the companies which manufacture the tuberculin used to administer the skin test.

While all the administrative agencies from the medical department to the Commissioner of the Department of Corrections, refused to have anyone investigate my complaint, after writing the company which manaufactor's the tuberculin; the plaintiff received an certified letter marked "Open Immediately."

After the plaintiff, described the symptoms to the company and

without being tested against the tuberculin or it's components. Frederick L. Ruben, M.D., Director, Scientific and Medical Affairs responded: "We receive reports on other nonserious reactions, but I do not believe these would be useful for you. It is my belief that you are prone, for whatever reason, to an allergic reaction to Tubersol. It would be advisable for you NOT to receive Tubersol in the future, because it is likely that you would once again experience a reaction like the ones you had previously.

It then became apparent that the actions of the defendants were reckless and amounted to nothing less than deliberate indifference. Furthermore, established that he was retaliated against for redressing a grievance to the administrative agencies, all violations which were done maliciously.

The actions of defendant Hendricks, to ignore the plaintiffs' call for help and interference to take some kind of action against the medical department to curb the pattern of abuse and denial of the proper medical treatment that he sought, amounted to deliberate indifference.

The plaintiff, continues to file Remedy forms and Medical Request forms in this matter to no avail. Many during the years of 2003 and 2004. No matter how much harassment and duress, the plaintiff has been subjected too, he continues to file Remedy and Medical Request Forms, until he receive the medical attention and treatment which he is being denied.

During the year of 2002, plaintiff was forced into double lock on an illegal double lock unit with an inmate, which he did not know, nor had ever seen or spoke too. He was given an ultimatum of either being housed in the illegal double lock cell or detention.

From March 3, 2003 to April 3, 2003, plaintiff was moved from cell to cell, forced to double lock with inmates he did not know and each time given the ultimatum of detention, administratie segregation or locking in the illegal double cell.

Taking the ultimatum would have hendered my legal case, by denying me legal access to the courts, denying access to the law library and the paralegal currently assisting me with my case.

By way of Administrative Remedy Form, the defendants openly admitted that they were housing 96 inmates on a unit that was built to house 48 inmates and that there code requires no more than 64 inmates on each unit.

Yet, nurse Amato, is not a qualified medical professional, which in turn clearly violates the confidentiality clause of viewing medical records without first attaining a signed waiver of consent to do so.

The Phlem test, is a test in which the Nurse takes an oral swab from the patient, and submit it to the lab for testing. This test, prevents an allergic reaction, because it is not evasive and takes the three days for the result. The Department of Corrections sends out Urine Samples to the Lab every month for drug testing, and therefore have the capacity to utilize the same method of testing for diseases which are detrimental to the inmate population as a whole. In fact, the method currently employed, does not prevent the spread of Tuberculosis by sending a person to lock up, it actually contributes to the possible outbreak.

Placing a prisoner in lock up for failing to take the TB skin test, demonstrates a total disregard for the safety of the

population of both prisoner and staff alike. If the subject of this action is infected, he will transmit the disease to the officer assigned to the lock up unit, who will then spread it to his family and co workers.

In addition, he will spread this infection to other prisoner in the lock up unit, who will then in turn, infect others. In fact, the N.J.S.P. administrative segregation unit is like an revolving door and is one of the most frequent visited closed custody units by inmates from other institutions, camps, farms and halfway houses throughout the state. The fact is that many inmates are not tested upon their arrival, which can also put inates mat risk to contract the disease at an even higher rate. Thus, these actions are not preventing the possible out break or the dangers that go with it, but enhancing it.

The fact that a person is in fear of his life, and seek proper medical treatment, is not a cause to punish the prisoner involved. Even more, the person, who issued the disciplinary infraction against plaintiff was not the person who offered the plaintiff the test to begin with. The alleged Health Department Report, (which was the underlying reason for the charge,) was never produced, submitted or offered as part of the evidence. Therefore, the record clearly demonstrates a violation of due process.

5. Relief

(State briefly exactly what you want the court to do for you? Make no legal arguments. Cite no cases or statutes.)

A. To issue an **Injunction**, ordering each named defendant or their agents:

1. To refrain from harassing plaintiff as a form of retaliation.

2. To refrain from harassing plaintiff as the result of his personal beliefs and practice of religion.

3. To refrain from stigmatizing plaintiff as a trouble maker and to stop sending other correctional officers to press upon his well being, as the result of defendants personal vendetta and self gratification.

4. To refrain from unnecessary searches upon his privacy and cell.

5. The right to refrain from all medical treatment or test which maybe harmful to the plaintiff's health and well-being.

6. To refrain from forcing plaintiff to double lock against his own free will.

B. To grant **COMPENSATORY**, damages in the following amount:

1. $250,000.00, jointly and severally against defendants, Tyler, Amato, Lee, Lucca, Mee and Marshall, for the emotional injuries sustained as a result of their intentional negligent and denial of medical treatment, which I seeked. And as the supervisors to take action to prevent the abuse from further escalating against the plaintiff.

2. $250,000.00, jointly and severally against defendant Brown, Barbo, Cevasco, Makarski and Sheppard, for the emotional injuries resulting from their denial to investigate the plaintiff's complaints and which in hand denied him medical treatment. Which

violates plaintiff 8th Amendment rights.

3. $100,000.00, against defendant Hendricks, as the result of his denial to fairly review the complaints being brought before him and as the result of his negligence to have had the allegations raised against defendants Marshall, Lee, Amato and Malarski be referred to the proper agency or one of his staff members for investigation under his supervision caused the plaintiff grievous loss.

C. To grant **Punitive Damages**, in the following amounts:

1. $10,000.00, each against Marshall, Lee, Tyler, Sheppard, Makarski, Barbo and Cevasco;

2. $20,000.00, against Lucca Phd.;

3. $20,000.00, against Hendricks;

4. $20,000.00, against Amato;

5. $20,000.00, against Brown.

D. To grant other such relief as it may appear that plaintiff is entitled to.

Signed this the 15th day of JANUARY, 2005.

1-15-05
Date

Anthony Boone
Signature of Plaintiff

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

1-15-05
Date

Anthony Boone
Signature of Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

ANTHONY BOONE

(Petitioner)

v.

Devon Brown, James Barbo,
Richard Cevasco, Sheila Lee,
Shirley Tyler, Roy Hendricks,
C.A. Lucca, Gary Sheppard,
R. Makarski, Barber Marshall,
Mary Amato, Donald Mee, Jr.
Frank Bruno

(Respondent)

DECLARATION IN SUPPORT
OF REQUEST TO PROCEED
IN FORMA PAUPERIS

I, Anthony Boone, am the petitioner in the above-entitled case. In support of my motion to proceed without being required to prepay fees or costs or give any security therefor, I state that because of my poverty I am unable to pay the costs of said proceeding to give security therefor, that I believe I am entitled to redress.

I declare that the responses which I have made below are true.

1. Are you presently employment? Yes ____ No X

a. If the answer is yes, state the amount of your salary per month and give the name and address of your employer.

________________________________________
________________________________________
________________________________________

b. If the answer is no, state the date of last employment and the amount of the salary per month which you received.

________________________________________
________________________________________
________________________________________

2. Have you received, within the past twelve months, any money from any of the following sources?

a. Business, profession, or form of self-employment?
Yes ( ) No (X)

b. Rent payments, interest, or dividends?
Yes ( ) No (X)

c. Pensions, annuities or life insurance payments?
Yes ( ) No (X)

d. Gifts or inheritances?
Yes ( ) No (X)

e. Any other sources?
Yes ( ) No (X)

3. Do you own any cash or do you have money in a checking or savings account? Yes ( ) No (X).
[If the answer is yes, please state the amount in the account(s).

________________________________________

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?

Yes ( ) No (X)

a. If the answer is yes, describe the property and state its approximate value.

________________________________________
________________________________________
________________________________________
________________________________________

5. List the persons whom are dependent upon you for support; state your relationship to those persons, and indicate how much you contribute toward their support?

________________________________________
________________________________________
________________________________________
________________________________________

Anthony Boone
(Petitioner's Signature)

I declare under the penalty of perjury that the foregoing is true and correct.

Signed this 15 day of JANUARY, 2005.

Anthony Boone
(Petitioner's Signature)

**CERTIFICATION OF SERVICE**

I, Anthony Boone, the plaintiff in the aforementioned action, hereby certifies that one original and one copy per defendent have been sent to the U.S. Marshal's Office inorder to be properly served upon the defendants in accordance with the Rules of United States District Court.

The address is:

Commissioner
New Jersy Department Of Corrections
Whittlesey
P.O. Box 863
Trenton, N.J. 08625-0863

All other defendants address is:

New Jersey State Prison
Second & Cass Streets
P.O. Box 861
Trenton, N.J. 08625

Dated: 1-15-05

Anthony Boone
(Plaintiff's Signature)

Mr. Anthony Boone #231911/#259677B
Lock Bag R
Rahway, N.J. 07065
East Jersey State Prison

RAHWAY NJ
$3.85
U.S. POSTAGE

Mr. William T. Walsh, Clerk
United State District Court
402 E. State Street
Trenton, N.J. 08608