<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ANTHONY BOONE, | : | |
| | : | Civil No. 05-750 (AET) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **O P I N I O N** |
| DEVON BROWN, et al., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**APPEARANCES:**

>       ANTHONY BOONE, Plaintiff, <u>pro se</u>
>       # 231911/259677B
>       East Jersey State Prison
>       Lock Bag R
>       Rahway, New Jersey 07601

**THOMPSON,** District Judge

Plaintiff, Anthony Boone, confined at the East Jersey State Prison in Rahway, New Jersey, at the time this action was submitted for filing, seeks to bring this action <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915. Based on plaintiff's affidavit of indigence, the Court grants the application to proceed <u>in forma pauperis</u> and directs the Clerk of the Court to file the Complaint without pre-payment of the filing fee.

Having reviewed the Complaint, to identify cognizable claims pursuant to 28 U.S.C. § 1915(e)(2), the Court concludes that the Complaint should proceed in part. Petitioner also filed a motion for a preliminary and/or permanent injunction seeking an Order

enjoining defendants from harassing and retaliatory actions against him.  The motion was made returnable on the papers on August 1, 2005.  For the reasons set forth below, preliminary injunctive relief shall be granted in part.

## I.  BACKGROUND

Plaintiff, Anthony Boone ("Boone") is currently serving his prison term at East Jersey State Prison ("EJSP").  He brings this civil rights action against the following defendants: Devon Brown, Commissioner of the New Jersey Department of Corrections ("DOC"); James Barbo, DOC Director of Operations; Richard Cevasco, DOC Assistant Director of Operations; C.A. Lucca, DOC Quality Assurance; Sheila Lee, DOC Quality Assurance Coordinator; Gary Sheppard, DOC Chief Hearing Officer; R. Makarski, DOC Hearing Officer; Roy L. Hendricks, Administrator of New Jersey State Prison ("NJSP"); Shirley Tyler NJSP Assistant Administrator; Donald Mee, Jr., NJSP Assistant Superintendent; Mary Amato, NJSP Nurse; Barber Marshall, NJSP Nurse; and Frank Bruno, NJSP Inmate Request/Remedy Form Coordinator.  (Complaint, Caption, ¶¶ 3b, 3c).  The following factual allegations are taken from the Complaint and are accepted as true for purposes of this review.

In 1992, Boone submitted to a mandatory Mantoux Skin Test for detection of tuberculosis ("TB").  He alleges that he

suffered a severe allergic reaction to the test.[1]  Defendant
Nurse Sheila Lee, who had administered the test, examined Boone
two days later and assured plaintiff that he had "nothing to
worry about and the symptoms would subside in a few days, but are
not life-threatening."  The following year, in 1993, Boone
suffered the same reaction after the test was administered;
however, the symptoms lasted longer and were more severe.  Boone
alleges that he continued to suffer an allergic reaction each
time the test was administered.  Each time he complained to Lee,
and she told him the symptoms would pass.[2]  Eventually, Boone
requested a doctor's evaluation.  Lee never made any notation of
his complaints of allergic reaction, and she failed to note
Boone's request for a physician's evaluation.  (Compl.,
"Statement of Claim", ¶ 4, pg. 5).

    In 1994 and 1995, Boone requested alternative means of
testing for TB.  These requests were either ignored or denied.
In 1994, Lee issued a disciplinary charge against Boone for
refusing to submit to the Mantoux Skin test.  This charge was
later downgraded and dismissed.  From 1996 to 2002, Boone

---

[1]  Boone alleges that his arm became swollen and painful,
and he suffered excruciating headaches for several days.  In
1993, he also suffered chest pains, a rash, and headaches that
lasted longer.

[2]  Boone also requested literature on the side effects of
the Mantoux Skin test and the tuberculin used in the tests.  He
also sought information on alternative means of TB testing.  All
of his requests were denied.

continued to request alternative means of testing, but each request was refused.  However, no disciplinary charges were issued against him.  During this same time period and into 2003, Boone also filed inmate remedy forms on this issue.  (Id. at pgs. 6-7).

In 2003, after Boone again sought alternative testing, he was issued a disciplinary charge.  A hearing was conducted before defendant Makarski in plaintiff's absence.  Boone was found guilty and sanctioned by verbal reprimand.  When Boone attempted to appeal the charge by correspondence, he was informed that verbal reprimands are not appealable, despite the fact that any disciplinary infraction may serve to deny inmate incentive privileges, such as food package, special recreation, and institutional employment.  Disciplinary infractions also may affect parole considerations.  (Id. at pg. 7).

At some point in time, defendant Nurse Barber Marshall told Boone that it was impossible for him to have allergic reactions to the skin test because the test ingredients are synthetic.  She also told plaintiff that his request for an alternate test was denied for this reason.  Boone later learned through a source in the medical department that the manufacturer of the test had issued warnings of possible side effects to the tuberculin or its components that are used in the TB test.  (Id. at 8).

4

On February 9, 2004, Officer Burton approached Boone for the annual TB test.  Burton informed Boone that he need not come out of his cell if Boone declined the test.  Boone again requested an alternative test.  That same day, Nurse Marshall allegedly claimed that she had offered the test to Boone but Boone declined.  Boone asserts that he did not come into contact with Marshall that day.  (Id.).

On March 30, 2004, Burton and a health professional came to counsel Boone about the Mantoux skin test.  Boone again related his history of allergic reaction to the test in the past.  Boone alleges that he wrote numerous letters to the administrative officials in the DOC and at NJSP, requesting alternative testing and complaining of his reactions to the skin test to no avail. He states that Correctional Medical Services ("CMS") repeatedly told him that it was impossible to have an allergic reaction to the skin test.  (Id. at 9).

On April 2, 2004, Boone was charged with violating a prohibited act #.260, i.e., refusing to submit to mandatory medical testing.  An initial courtline proceeding was held before Hearing Officer Makarski on April 6, 2004.  Boone entered a plea of not guilty and sought cross-examination of the officers who wrote the disciplinary report and all witnesses to the incident. Boone contends that Makarski postponed the hearing, but told plaintiff that after his confrontation, Makarski will find him

guilty and send Boone to administrative segregation.  On three later occasions, April 8, 13, and 15, 2004, Makarski postponed the hearing, instructing Boone to either retype or resubmit his confrontation questions.  A fifth hearing was eventually convened on April 29, 2004.  (Id. at 10).

At the April 29, 2004 hearing, Boone allegedly confronted Officer Burton and Nurse Marshall and was able to dispute Nurse Marshall's purported contact with Boone on February 9, 2004. However, the remainder of the hearing was postponed.  On May 12, 2004, a seventh hearing was held and two unit officers were questioned.  They confirmed that Nurse Marshall did not meet with Boone on February 9, 2004.  Another hearing on May 18, 2004 was held and defendant Lucca was questioned regarding the basis for the disciplinary report.  It was allegedly revealed that Lucca never offered the TB test to Boone or spoke to him.  Lucca had relied on the complaint by the unknown health department employee, who was never identified.  (Id. at 10-11).

A final hearing was held on May 20, 2004.  Boone was not able to confront the health department worker who had allegedly counseled him, nor did he receive a copy of the statement by the Quality Assurance Coordinator.  Makarski found Boone guilty of the disciplinary charge and sanctioned him to 15 days detention, 180 days administrative segregation, 180 days loss of commutation time, and 30 days loss of privileges.  (Id. at 11).

Since May 2004, Boone has been confronted by numerous officers telling him to stop writing remedy forms or they would make his life a "living hell".  However, Boone continued to write to DOC officials, the U.S. Department of Health, and the manufacturing companies for the TB skin test.  The DOC officials refused to investigate Boone's complaints.  Nevertheless, after writing to one manufacturer, Boone received a certified letter from Frederick L. Ruben, M.D., Director of Scientific and Medical Affairs.  The letter informed Boone that there were other non-serious reactions to Tubersol and it would be advisable for Boone not to receive Tubersol in the future.  (Id. at 12-13).

Boone alleges that the defendants were deliberately indifferent to his medical complaints and request for an alternative TB test.  He also claims that defendants retaliated against him for registering complaints.  Boone seeks injunctive relief directing defendants to stop harassing him, releasing him from double lock, and allowing Boone to decline TB testing that is harmful to him.  He also asks for compensatory and punitive damages in excess of $600,000.00.

On June 7, 2005 and June 27, 2005, Boone filed a motion for preliminary and permanent injunctive relief.[3]  In support of his motion, plaintiff wrote to the Court complaining that he was

---

[3]  These motions were signed and dated by plaintiff on May 20, 2005 and June 18, 2005, respectively.

placed in medical isolation and verbally threatened on several occasions in April 2005.  In May 2005, Boone alleges that he was wrongfully charged with assaulting an officer.  Sheppard sanctioned Boone to 90 days administrative segregation.  Boone was place in "double lock" with another inmate and has been denied his property since May 20, 2005.  He seeks immediate release from administrative segregation and cessation of all harassment.

Boone also submitted an amended complaint on June 27, 2005. He names additional defendants, Elmire Kapchits, physician at EJSP; Michael Powers, NJSP Assistant Administrator; Alfaro Ortiz, Jr., EJSP Administrator; Christina M. Prestien, EJSP Nurse; Jane Doe, EJSP Nurse; and John Doe, EJSP correctional officer.  New allegations catalog repeated instances of harassment in retaliation for Boone's complaints about TB testing, and deliberate refusal to provide alternative means of testing for TB for plaintiff's and inmate protection from the prevalent and highly contagious disease.

For instance, on January 13, 2005, Boone's request for a transfer to EJSP was denied, but on January 18, 2005, he was abruptly transferred to EJSP.  (Am. Compl., ¶¶ 52, 54).  On January 15, 2005, Boone's cell was searched and a copy of his complaint was confiscated.  (Id. at ¶ 53).  On February 16, 2005, Boone was called for a TB test.  He related to Nurse Prestien the

8

history of his allergic reaction to the test and a letter regarding his legal battle.  She did not offer to give him the test, but did ask if he suffered from TB related symptoms, to which plaintiff responded in the negative.  (Id. at ¶¶ 55-58).

On March 3, 2005, Dr. Kapchits gave Boone a blood test and informed Boone that he had abnormal liver function.  He has not received the results of the blood test; however, Dr. Kapchits told plaintiff that he would not be contacted if the results were negative.  (Id. at ¶ 59-60).

On March 8, 2005, a per curiam decision was issued by Judges Wecker and S.L. Reisner of the Superior Court of New Jersey, Appellate Division, with respect to Boone's appeal of the disciplinary charge and resulting sanction for committing a prohibited act in refusing to submit to mandatory TB testing. Boone received the decision on March 15, 2005.  He does not attach a copy of the decision, but states that the court remanded the matter for re-hearing.  Boone further states that the court found that he was denied the right to confront the witnesses against him and was improperly limited to submitting written, pre-approved questions to be answered by the witnesses.  The court also noted that Boone raises issues of constitutional dimension that cannot be decided in the absence of a proper factual record.  The court further acknowledged federal court precedent supporting the DOC's right to administer TB tests over

9

an inmate's religious objections.  See Karolis v. New Jersey
Dep't of Corrections, 935 F. Supp. 523, 528 (D.N.J. 1996).
However, the case did not address an inmate's right to
alternative TB testing in the event of allergic reaction to the
Mantoux skin test.  The court concluded that Boone was entitled
to a new hearing to adjudicate the issues forming the basis for
his objections to the Mantoux skin test, including the history of
his adverse reactions, the availability of other tests, and any
religious objections to the skin test.  The court gave the DOC 45
days to convene a hearing and render a final written
determination, which determination was to be forwarded to the
court.  The state court retained jurisdiction over the matter.
(Id. at ¶¶ 61-62).

     The first hearing date of April 1, 2005 was postponed and
the matter rescheduled for April 4, 2005.  Boone submitted
specific requests for discovery relating to confrontation and
cross-examination of certain witnesses, to review all evidence
against him, and to have a medical professional from EJSP answer
questions about the DOC policy concerning TB and TB testing, and
alternatives to the Mantoux skin test.  The hearing officer
questioned the authenticity of plaintiff's July 27, 2004 letter
from the Aventis Company regarding allergic reactions to TB
testing.  The hearing was postponed for additional information
and preparation.  (Id. at ¶¶ 64-67).

On April 7, 2005, Officer John Doe approached Boone and threatened him with retaliatory action if Boone did not drop his lawsuit.  On April 11, 2005, the hearing was again postponed for further information.  On April 13, 2005, Boone asked to see a doctor and was denied.  He also asked to have his property and a shower, both of which were denied.  On April 14, 2005, Boone was needlessly handcuffed for transport for a chest x-ray.  The handcuffs were not removed for the x-ray so Boone had to have a second x-ray.  He has not received any results from the x-ray. That same day, Boone received his medical record request, but the records failed to note that he never actually refused the test, although it did document his allergic reactions and the on-going court proceedings.  Boone also learned that Nurse Jack made a false medical report claiming to have counseled Boone about HIV post-test counseling.  (Id. at ¶¶ 68-84, 87).

Boone requested his property and a shower on April 15, 17, 18, and 19, 2005.  All requests were denied.  On April 16 and 19, 2005, he filed a remedy form with regard to his placement on medical isolation on April 12, 2005.  On April 22, 2005, Boone received a response that he was released from medical isolation. He confirms that he was released on April 19, 2005.  Boone submitted another remedy form on April 27, 2005 with respect to the lack of medical counseling he was required to receive under DOC Tuberculosis Policy.  (Id. at ¶¶ 88-102).

A fourth hearing was scheduled for April 28, 2005 and was postponed for additional information.  Boone was again placed in medical isolation.  A May 4, 2005 hearing was postponed and Boone was informed that the hearing officer did not need to see plaintiff, only a paralegal.  On May 5, 2005, Boone was informed by the paralegal that the hearing officer dismissed the charge on numerous grounds.  Boone contends that the charge was dismissed so as to avoid having to comply with the directives of the Appellate Division and to leave the door open for future charges. (Id. at ¶¶ 103-106).

Finally, plaintiff complains that he was denied outdoor recreation for a total of 90 days during his 180 days in administrative segregation.  (Id. at ¶¶ 108-112).  His amended complaint continues to seek injunctive relief from harassment and retaliation, double-lock, and the Mantoux skin test.  He also seeks further compensatory and punitive damages in excess of $1 million, and the return of his 180 days commutation credits and work credits.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief,

where the plaintiff is a prisoner or is proceeding in forma pauperis.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).

13

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. <u>Denton v. Hernandez</u>, 504 U.S. 25, 34 (1992); <u>Alston v. Parker</u>, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim, but lacked sufficient detail to function as a guide to discovery, was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

### III.  **SECTION 1983 LIABILITY**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

14

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## IV.  ANALYSIS

Construing the Complaint most liberally for the pro se plaintiff, the Court finds that Boone alleges the following claims: (1) denial of medical care; (2) retaliation; (3) denial of recreation; (4) denial of due process with respect to medical isolation; (5) denial of disciplinary due process; and (6) restoration of commutation and work credits.

### A.  Denial of Medical Care

Boone appears to claim that he is being denied alternative means of testing for TB, which is a prevalent and highly contagious disease in prison.  Based on the allegations in the Complaint, it seems that Boone has not received a TB test since 1993 because he has stated an allergic reaction to the mandatory Mantoux skin tests administered by the DOC in New Jersey prisons.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with

adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04
(1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).  In order
to set forth a cognizable claim for a violation of his right to
adequate medical care, an inmate must allege:  (1) a serious
medical need; and (2) behavior on the part of prison officials
that constitutes deliberate indifference to that need.  Estelle,
429 U.S. at 106; Natale v. Camden County Correctional Facility,
318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the
inmate must demonstrate that his medical needs are serious.
"Because society does not expect that prisoners will have
unqualified access to health care, deliberate indifference to
medical needs amounts to an Eighth Amendment violation only if
those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9
(1992).  The Third Circuit has defined a serious medical need as:
(1) "one that has been diagnosed by a physician as requiring
treatment;" (2) "one that is so obvious that a lay person would
recognize the necessity for a doctor's attention;" or (3) one for
which "the denial of treatment would result in the unnecessary
and wanton infliction of pain" or "a life-long handicap or
permanent loss."  Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d
Cir. 2003)(internal quotations and citations omitted); see also
Monmouth County Correctional Institutional Inmates v. Lanzaro,

16

834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006
(1988).

The second element of the Estelle test requires an inmate to
show that prison officials acted with deliberate indifference to
his serious medical need.  See Natale, 318 F.3d at 582 (finding
deliberate indifference requires proof that the official knew of
and disregarded an excessive risk to inmate health or safety).
"Deliberate indifference" is more than mere malpractice or
negligence; it is a state of mind equivalent to reckless
disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S.
825, 837-38 (1994).  Furthermore, a prisoner's subjective
dissatisfaction with his medical care does not in itself indicate
deliberate indifference.  Andrews v. Camden County, 95 F. Supp.2d
217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145
(D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly,
"mere disagreements over medical judgment do not state Eighth
Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir.
1990).  "Courts will disavow any attempt to second-guess the
propriety or adequacy of a particular course of treatment ...
[which] remains a question of sound professional judgment."
Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d
Cir. 1979) (internal quotation and citation omitted).  Even if a
doctor's judgment concerning the proper course of a prisoner's
treatment ultimately is shown to be mistaken, at most what would

17

be proved is medical malpractice and not an Eighth Amendment
violation.  <u>Estelle</u>, 429 U.S. at 105-06; <u>White</u>, 897 F.3d at 110.

     The Third Circuit has found deliberate indifference where a
prison official: (1) knows of a prisoner's need for medical
treatment but intentionally refuses to provide it; (2) delays
necessary medical treatment for non-medical reasons; or (3)
prevents a prisoner from receiving needed or recommended
treatment.  <u>See</u> <u>Rouse</u>, 182 F.3d at 197.  The court has also held
that needless suffering resulting from the denial of simple
medical care, which does not serve any penological purpose,
violates the Eighth Amendment.  <u>Atkinson</u>, 316 F.3d at 266.  <u>See
also</u> <u>Monmouth County Correctional Institutional Inmates</u>, 834 F.2d
at 346 ("deliberate indifference is demonstrated '[w]hen ...
prison authorities prevent an inmate from receiving recommended
treatment for serious medical needs or deny access to a physician
capable of evaluating the need for such treatment"); <u>Durmer v.
O'Carroll</u>, 991 F.2d 64 (3d Cir. 1993); <u>White v. Napoleon</u>, 897
F.2d 103 (3d Cir. 1990).

     To the extent that Boone may be alleging denial of an
alternative means of testing for TB, the facts as alleged, if
true, may support a claim that defendants have deliberately
ignored his repeated requests and have wilfully denied him
reasonable alternatives to necessary healthcare.  However, to
prevail on a denial of medical claim, Boone must show that TB

18

testing is a serious medical need.  This is a factual issue that is not appropriately decided on a <u>sua</u> <u>sponte</u> summary screening. Suffice it to say, however, Boone has alleged that the Mantoux skin test, to which he is allergic, is a mandatory test, which tends to prove that testing for TB in prison is a serious preventive medical need.  <u>See</u> <u>Karolis v. New Jersey Dep't of Corrections</u>, 935 F. Supp. 523 (D.N.J. 1996).  Therefore, the Court will allow this claim to proceed.

B.  <u>Retaliation Claim</u>

Next, Boone alleges that defendants have retaliated against him for bringing complaints against the DOC and its officials with respect to the TB testing.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ... ."  <u>White v. Napoleon</u>, 897 F.2d 103, 111-12 (3d Cir. 1990).  To prevail on a retaliation claim, plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001) (quoting <u>Allah v. Seiverling</u>, 229 F.3d 220, 225 (3d Cir. 2000)).  <u>See also</u> <u>Anderson v. Davila</u>, 125

F.3d 148, 160 (3d Cir. 1997) (citing <u>Mt. Healthy City Sch. Dist.</u>
<u>Bd. of Educ. v. Doyle</u>, 429 U.S. 274 (1977)); <u>Thaddeus-X v.</u>
<u>Blatter</u>, 175 F.3d 378, 386-99 (6th Cir. 1999), <u>cited with</u>
<u>approval in</u> <u>Allah</u>, 229 F.3d at 225.

Here, Boone cites numerous instances where defendants appear
to have acted against him in a retaliatory manner for pressing
his claim about alternative TB testing.  These includes actual
threats against him by certain correctional officers and a
hearing officer.  The allegations also show that disciplinary
actions were taken against Boone for seeking an alternative test
from the Mantoux test.  He has been placed in medical isolation
and "double-lock celling" with the loss of certain privileges and
basic needs, *albeit* for short duration, such as showers,
recreation, and access to the law library for different periods
of time.  He has also been denied his personal property.  More
importantly, Boone appears to allege that defendants refuse to
provide him with an alternative test, such as a blood test, to
screen him for TB, in retaliation for complaining about the
Mantoux skin test.  While Boone was not actually deterred from
seeking redress through the administrative process in prison (in
which he was unsuccessful) and in state court (in which he was
allegedly successful), and now in federal court by filing this
Complaint, he plainly alleges that defendants used threats, false

disciplinary charges,[4] and isolation as a means to prevent him or intimidate him from pursuing his claims.  Threats, the use of disciplinary action to suppress plaintiff's right to complain, isolation, and all of the incidental losses or denials of privileges as alleged by plaintiff suggest impermissible retaliatory action in violation of Boone's First Amendment rights.  Therefore, based on these allegations, if true, Boone will be allowed to proceed on his retaliation claim.

C.  Denial of Recreation

The denial of exercise or recreation can result in a constitutional violation.  "[M]eaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'"  Peterkin v. Jeffes, 855 F.2d 1021, 1031 (3d Cir. 1988)(quoting Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)); see also Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996)("[d]eprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation."); Patterson v. Mintzes, 717 F.2d 284, 289 (6th Cir. 1983); Campbell v. Cauthron, 623 F.2d 503, 506-07 (8th Cir. 1980); Kirby v. Blackledge, 530 F.2d 583, 587 (4th Cir. 1976); Loe v. Wilkinson, 604 F. Supp. 130, 135 (M.D.Pa. 1984).  However, the lack of exercise can only rise to a constitutional level

---

[4] Nevertheless, the act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights.  See this Opinion, infra, at pp. 29-30.

"where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened." Spain, 600 F.2d at 199.  Thus, a constitutional violation will occur when the deprivation of exercise extends for a prolonged period of time and tangible physical harm resulting from the lack of exercise is demonstrated.  In order to demonstrate a deprivation of a constitutional right to recreation or exercise, plaintiff must still satisfy the Eighth Amendment standard and show deliberate indifference on the part of prison officials.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Here, Boone has simply alleged that he was unable to attend outdoor recreation for a total period, not consecutive, of 90 days while he was in administrative segregation.  These limitations are regulated with respect to sanctions imposed.  It does not appear, from plaintiff's recitation of facts that his loss of recreation exceeded that permitted under prison regulations.  He also does not allege any harm or injury as a result of this limited loss of outdoor recreational time. Finally, the allegations do not support deliberate indifference by defendants; rather, the amended complaint shows that the loss of 90 days outdoor recreation was well below the permissible sanctions in administrative segregation.  Thus, there was no prolonged deprivation of a constitutional magnitude, and Boone's

denial of recreation claim will be dismissed pursuant to 28
U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

D.  Denial of Due Process Claims

    1.  *Medical Isolation*

    Boone's procedural due process rights are triggered by a
deprivation of a legally cognizable liberty interest.[5]  For a
prisoner, like Boone, such a deprivation occurs when the prison
"imposes atypical and significant hardship on the inmate in
relation to the ordinary incidents of prison life." Sandin v.
Conner, 515 U.S. 472, 484 (1995).  Lesser restraints on an
inmate's freedom are deemed to fall "within the expected
parameters of the sentence imposed by a court of law."  Id.
Thus, "[a]s long as the conditions or degree of confinement to
which the prisoner is subjected is within the sentence imposed
upon him and is not otherwise violative of the Constitution, the
Due Process Clause does not in itself subject an inmate's
treatment by prison authorities to judicial oversight." Montanye
v. Haymes, 427 U.S. 236, 242 (1976), quoted in Sandin, 515 U.S.
at 480.  See also Asquith v. Dep't of Corrections, 186 F.3d 407,
410-11 (3d Cir. 1999) (no liberty interest under the Due Process
Clause in remaining in halfway house).  Here, Boone's
administrative segregation and medical isolation, even if due to

---

[5] The Due Process Clause of the Fourteenth Amendment
provides that no State may "deprive any person of life, liberty,
or property, without due process of law."

alleged false disciplinary actions, did not trigger the protections of the Due Process Clause.  See id.

The Third Circuit has observed, however, that if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, that factor should be considered in determining whether the prisoner has been subjected to "atypical and significant hardship" triggering due process protection.  Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997).  Here, the Complaint fails to allege atypical or significant hardship with respect to plaintiff's medical isolation and administrative segregation.  The time he spent in medical isolation was short, only days to several weeks at a time.  Thus, the alleged lack of access to shower facilities, his personal property, or other privileges for these short durations do not state a deprivation claim of constitutional magnitude.  Accordingly, this aspect of Boone's due process claim will be dismissed for failure to state a cognizable claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

2. *Denial of Procedural Due Process*

However, it also appears that Boone may be claiming that he was not afforded his basic due process rights with respect to the disciplinary charges lodged against him.  Boone alleges that he was not allowed the right to confront the witnesses against him during the disciplinary proceedings in 2004, in which he was

24

charged and found guilty of refusing to submit to mandatory medical testing.  To support this denial of procedural due process claim, Boone must demonstrate that the procedures afforded him fell short of the requirements enunciated in Wolff v. McDonnell, 418 U.S. 539 (1974).[6]  Jackson v. Johnson, 15 F. Supp.2d 341, 351 (S.D.N.Y. 1998).  See Sandin, 515 U.S. at 487.

     In Wolff v. McDonnell, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals."  Wolff, 418 U.S. at 563-71.  However, inmates do not have an absolute federal constitutionally-protected right to confront and cross-examine witnesses at their prison disciplinary hearings.  Id. at 567-68.  See also Baxter v. Palmigiano, 425 U.S. 308, 321-22 (1976); Young

_____

     [6]  In Wolff, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment.  Id. at 556-57; Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

v. Kann, 926 F.2d 1396, 1404 (3d Cir. 1991); Sanchez v. Roth, 891
F. Supp. 452, 458-59 (N.D.Ill.1995); Harrison v. Pyle, 612 F.
Supp. 850, 854-55 (D. Nev. 1985).  Thus, in this instance, where
the sole complaint alleging denial of due process is based on the
denial of Boone's ability to confront the witnesses against him
at the disciplinary hearings, Boone has failed to state a
cognizable § 1983 claim under Wolff.

Generally, a prisoner plaintiff may bring an § 1983 action
for money damages stemming from an alleged denial of procedural
due process, if the procedural protection is cognizable in a §
1983 claim.  See Wolff, supra; Henry v. Sanchez, 923 F. Supp.
1266, 1270 (C.D. Calif. 1996).  In Wolff, the Supreme Court held
that, although claims for injunctive relief were barred by
Preiser v. Rodriquez, 411 U.S. 475 (1973), plaintiffs were
allowed to bring a damage claim because the claim was based on
"damages for the deprivation of civil rights resulting from the
use of the allegedly unconstitutional procedure."  Sanchez, 923
F. Supp. at 1270.  In Heck v. Humphrey, 512 U.S. 477 (1994), the
Supreme Court reaffirmed this principle, stating that Wolff
"recognized a Section 1983 claim for using the wrong procedures,
not for reaching the wrong result. ... Thus, the claim at issue
in Wolff did not call into question the lawfulness of plaintiff's
continuing confinement."  Heck, 512 U.S. at 482-83.  However,
where this Court has determined that the Complaint fails to

26

allege a cognizable claim that Boone was denied disciplinary due process, he is not entitled to damages.

Moreover, Boone was not harmed by his inability to confront and cross-examine adverse witnesses at his hearings.  As noted above, when an inmate is not afforded procedural protections to which he may be entitled, the district court must determine whether the denial of due process caused the resulting deprivations for which damages are sought.  See Carey v. Piphus, 435 U.S. 247, 261 (1977).  Here, Boone alleges that the New Jersey Appellate Division sustained his appeal on this issue and remanded the matter for further administrative disciplinary proceedings with provisions for Boone's confrontation of witnesses.  Upon remand, the prison conducted disciplinary proceedings in April and May 2005, oftentimes postponing the hearings to allow for additional information with respect to Boone's right to confront certain witnesses.  The proceedings were concluded in early May 2005 upon the hearing officer's dismissal of the charges before all the evidence was presented. Thus, Boone was successful in challenging the disciplinary charge and having it dismissed, and was not injured by the initial denial to confront adverse witnesses to warrant an award of damages.[7]  Indeed, any such claim regarding a right to confront

---

[7]  A plaintiff who brings a successful § 1983 action based on a due process violation may be entitled to nominal damages even if there is no proof of actual injury.  Carey v. Piphus, 435

witnesses at the hearings is rendered moot by the dismissal of the disciplinary charges.

Therefore, Boone's claims based on denial of disciplinary due process protections is not cognizable under § 1983 and it will be dismissed in its entirety as against all defendants for failure to state a claim.

D.   Restoration of Commutation Credits

It is clear in this case, however, that Boone seeks not only damages for defendants' alleged due process violation, but also restoration of commutation and work credits that would afford his earlier release from prison.  In this regard, Boone's claim relates to the result, not simply the procedure, and the action is not cognizable under § 1983.  Accordingly, he must bring his restoration of credits claim in a habeas petition under 28 U.S.C. § 2254.  See Preiser v. Rodriguez, 411 U.S. 475 (1973).

In Preiser, the Supreme Court analyzed the intersection of 42 U.S.C. § 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254, and held that state prisoners who had been deprived of good-conduct-time credits by the New York State Department of Correctional Services as a result of disciplinary proceedings could not bring a § 1983 action seeking injunctive relief to

_____

U.S. 247, 266-67 (1978).  Here, Boone is not entitled to even nominal damages because the Court has determined that Boone does not have a cognizable § 1983 claim for denial of due process with respect to the inability to confront and cross-examine adverse witnesses.

28

compel restoration of the credits, which would have resulted in their immediate release. 411 U.S. at 476. Specifically, the Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." Id. at 500.

Therefore, Boone's claim for restoration of commutation credits affecting his earlier release will be dismissed without prejudice to him bringing an appropriate claim under 28 U.S.C. § 2254.

E.   False Disciplinary Charges

Finally, Boone appears to suggest that the basis for the disciplinary charges was to punish him for pursuing claims for an alternative means of TB testing. In other words, Boone asserts that the charges against him are false. The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights. See Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986)(holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"), cert. denied, 485 U.S. 982 (1988); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)(finding that so long as prison officials

29

provide a prisoner with the procedural requirements outlined in
<u>Wolff</u>, 418 U.S. at 558, then the prisoner has not suffered a
constitutional violation).  <u>See also</u> <u>Creter v. Arvonio</u>, No. 92-
4493, 1993 WL 306425, at *7 (D.N.J. Aug. 5, 1993); <u>Duncan v.
Neas</u>, No. 86-109, 1988 WL 91571, at *1 (D.N.J. Aug. 30,
1988)(determining that "the alleged knowing falsity of the charge
[does not state] a claim of deprivation of a constitutionally
protected liberty interest ... where procedural due process
protections were provided).

Here, Boone does not allege that he was denied a
disciplinary hearing.  Rather, he complains that he was not
allowed to confront the witnesses against him to prove his
innocence.  As discussed above, a prisoner does not have a
procedural due process right to confront witnesses against him at
a prison disciplinary hearing.  <u>Wolff</u>, 418 U.S. at 567-68.

Thus, absent an allegation that he was denied a meaningful
opportunity to contest the charges at a disciplinary hearing, any
claim by Boone based on allegedly false disciplinary charges is
not cognizable under § 1983.[8]  Accordingly, this claim will be
dismissed for failure to state a claim pursuant to 28 U.S.C. §§
1915(e)(2)(B)(ii) and 1915A(b)(1).

---

[8]  However, the Court recognizes that the defendants'
bringing of false disciplinary charges against Boone to chill his
right to file grievances with respect to alternative TB testing
is an aspect of Boone's First Amendment retaliation claim which
will be allowed to proceed.

30

## V.   <u>PRELIMINARY INJUNCTION</u>

In connection with his initial Complaint and amended Complaint, Boone also filed a motion for preliminary and permanent injunctive relief.  To secure the extraordinary relief of a preliminary injunction, Boone must demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendant[s]; and (4) granting the injunction is in the public interest." <u>Maldonado v. Houston</u>, 157 F.3d 179, 184 (3d Cir. 1998), <u>cert. denied</u>, 526 U.S. 1130 (1999)(as to a preliminary injunction); <u>see also</u> <u>Ballas v. Tedesco</u>, 41 F. Supp.2d 531, 537 (D.N.J. 1999) (as to temporary restraining order).  A plaintiff must establish that all four factors favor preliminary relief. <u>Opticians Ass'n of America v. Independent Opticians of America</u>, 920 F.2d 187 (3d Cir. 1990). The standards for a permanent injunction are essentially the same as for a preliminary injunction, except that the plaintiff must show actual success on the merits, not a likelihood of success, to obtain a permanent injunction. <u>See</u> <u>University of Texas v. Camenisch</u>, 451 U.S. 390, 392 (1981).

Here, Boone relies on his original and amended Complaint with respect to his application for injunctive relief.  Counsel for the state defendants have filed a letter brief in opposition to Boone's motion for a preliminary and a permanent injunction.

Having thoroughly reviewed the Complaints, Boone's motion, and the State's opposition thereto, pursuant to Fed.R.Civ.P. 78, the Court finds that plaintiff is not entitled to a permanent injunction at this time because he has not yet actually proven success on the merits of his claims.  Accordingly, the motion for a permanent injunction is denied without prejudice.  The Court next turns to the request for preliminary injunctive relief.

    1.  *Likelihood of Success on the Merits*

As to the request for a preliminary injunction, as shown above in this Opinion, Boone has alleged facially cognizable claims with respect to his allegations of retaliation and denial of health care as to alternative TB testing, which is sufficient to allow the claims to proceed past the sua sponte screening stage under 28 U.S.C. §§ 1915(e)(2) and 1915A.  This determination, at this juncture, is adequate to show a likelihood of success on the merits of these claims.[9]  However, as to all of

---

    [9]  The Court rejects the State's contention that there is no likelihood of success on the merits of Boone's denial of medical care claims because the state defendants, mostly non-physician administrators cannot be charged with deliberate indifference  to Boone's medical needs.  See Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993).  In Durmer, the Third Circuit held that administrators who are not doctors or medical staff could not be found deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."  Id. at 69. The Third Circuit further explained in Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004), "[i]f a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. ... [and] absent a reason to believe (or actual knowledge) that

32

the remaining claims that this Court has dismissed herein,
preliminary injunctive relief is denied because Boone clearly
cannot show any likelihood of success on the merits of said
claims.

    2.   *Irreparable Harm*

    The Court is also unpersuaded at this juncture that Boone is
unable to show irreparable harm, as argued by the State, with
respect to his denial of medical care claim.  It seems patently
clear that a continued denial of alternative TB testing and the
alleged actions by the defendants, which serve to expose Boone to
harm due to a refusal to screen him for the highly contagious and
infectious disease, is sufficient to demonstrate irreparable
harm.  However, the Court finds no showing of irreparable harm
with respect to plaintiff's retaliation claim.  While the Court
has determined that Boone alleges a facially cognizable claim

---

prison doctors or their assistants are mistreating (or not
treating) a prisoner, a non-medical prison official ... will not
be chargeable with the Eighth Amendment scienter requirement of
deliberate indifference." <u>Id</u>. at 236.

    Here, the Complaints make very clear that the administrative
prison officials had actual knowledge of Boone's complaints about
TB testing and the lack of alternative testing for him due to
allergies to the mandatory Mantoux skin test.  The Complaints
allege that these state officials were also aware that Boone was
not receiving any TB testing despite the DOC's established and
mandatory policy for TB testing.  <u>See</u> <u>Maldonado v. Terhune</u>, 28 F.
Supp.2d 284 (D.N.J. 1998); <u>Karolis</u>, <u>supra</u>.  Therefore, this Court
finds that Boone has alleged a viable claim against the state
administrators, consistent with <u>Durmer</u> and <u>Spruill</u>, and that
based on the allegations, if true, plaintiff has a reasonable
likelihood of success on the merits.

with respect to the claim of retaliation, there are insufficient facts to show that any of the retaliatory acts directed at plaintiff (such as medical isolation, double-lock housing, prison transfers, or denial of recreation or showers for short duration) have exposed or will expose Boone in the future to irreparable harm.  To the extent that the alleged retaliation is conducted allegedly to stifle Boone's complaints about the TB testing, Boone has continued to file grievances and this action, which further attests to the lack of any demonstrable irreparable harm at this time.

     3.   *Compelling State Interest*

The State admits that it has a compelling interest in responding to the threats of serious contagious diseases, such as TB, by diagnosing and treating all state inmates, and preventing the spread of TB in prison and jail facilities.  This state interest was acknowledged and upheld in <u>Karolis</u> and <u>Maldonado</u>, <u>supra</u>.  These cases, however, dealt with the issue of whether a prisoner could refuse the Mantoux test on religious grounds.  In this case, Boone is refusing the Mantoux test for health reasons as he has demonstrated a severe allergic reaction to the components in the test.

In balancing the equities and harm, it would appear that Boone has demonstrated a more compelling interest to be likewise protected from exposure to TB, in line with the State's interest

34

to reduce the threat and exposure of TB in its prisons.  The State need only provide an alternative means of testing, as sought by Boone, for detecting the disease and protecting against its spread in prison.[10]  Therefore, a preliminary injunction directing defendants to provide alternative testing will serve both plaintiff's more compelling interest to be free from harm and the State's compelling interest to reduce the spread of TB in prison.

4.  *Public Interest*

Finally, it is always in the public interest to ensure that any prisoner litigation affecting fundamental liberty interests comport with the requirements of due process.  Accordingly, as set forth above, the Court finds that the overall equities appear to favor the issuance of a preliminary injunction with respect to providing Boone with an alternative means of TB testing on an annual basis.  However, as to the remaining demands for injunctive relief as requested by Boone at this time, the Court finds that the overall equities do not favor the issuance of a preliminary injunction.

---

[10]   In its opposition papers, the State contends that Boone was given a chest x-ray ostensibly for detection of TB.  However, there is no documentation that a chest x-ray is an effective alternative means for TB detection, or that the x-ray was in fact administered for this purpose.

35

## VI.   CONCLUSION

For the reasons stated above, the Court will dismiss plaintiff's claims asserting denial of recreation and denial of disciplinary due process with respect to his medical isolation and "double-lock celling", inability to confront adverse witnesses at his disciplinary hearings, and false disciplinary charges, for failure to state a cognizable claim under § 1983. The Court will also dismiss without prejudice plaintiff's claim for restoration of commutation and work credits because such a claim is not actionable under § 1983, but instead, should be raised in a federal habeas proceeding.  The remaining claims alleging retaliation by defendants and denial of medical care with respect to alternative testing for TB, will be allowed to proceed as against all defendants at this time.  Finally, Boone's motion for permanent injunctive relief will be denied at this time, and his motion for a preliminary injunction will be granted only insofar as the State will be directed to provide Boone with alternative TB testing on an annual basis pending the outcome of this action.  However, preliminary injunctive relief will be denied without prejudice as to all remaining demands as asserted by plaintiff.  An appropriate Order follows.

s/Anne E. Thompson
ANNE E. THOMPSON
United States District Judge

DATED: August 22, 2005

36